A97A1548. IN THE INTEREST OF D. L., a child.
(492 SE2d 273)

BLACKBURN, Judge.
D. L. appeals the juvenile court's transfer of his case to superior court. When he was 16, D. L. allegedly shot a man in the stomach, an offense which, if he were an adult, would constitute aggravated assault. After D. L. turned 17 years old, the juvenile court entered an order closing his case without holding an adjudicatory hearing. After D. L. turned 18, however, the juvenile court reopened the case and transferred it to superior court following a transfer hearing. Because

he had turned 18 by the time of the transfer hearing, D. L. contends that the transfer was void due to the juvenile court's lack of jurisdiction over him. He also claims that the transfer hearing violated his due process rights, and contends that the juvenile court erred in reopening his case after having closed it. For the reasons set forth below, we affirm.

1. Although he concedes that the juvenile court had jurisdiction over him at the time the petition was filed, D. L. argues that it lost jurisdiction over him when he turned 17. For this reason, he contends the transfer of his case to superior court is void.[1]

The facts show that D. L. was born on October 2, 1978, and was 16 years old when the subject offense occurred on December 7, 1994. The delinquency petition was filed shortly thereafter. Following repeated continuances of his adjudicatory hearing, the juvenile court eventually entered an order closing the case on March 7, 1996. The order states that the case was closed because D. L. was incarcerated in the state prison system on an unrelated matter, and because he had turned 17 years old. However, nine months later, after D. L. had turned 18, the juvenile court reopened the case for the purpose of holding a transfer hearing pursuant to OCGA § 15-11-39. After this hearing, on March 6, 1997, the court entered an order transferring D. L.'s case to superior court.

(a) In support of his position that the juvenile court lost jurisdiction over him the day he turned 17, D. L. relies upon the definition of "child" contained in OCGA § 15-11-2 (2) as a limitation on the jurisdiction of the juvenile court. Pursuant to subsection (A) of that Code section, "child" is defined as any individual who is under the age of 17. See OCGA § 15-11-2 (2) (A). Pursuant to OCGA § 15-11-2 (2) (B), "child" also includes someone who is under the age of 21, but who committed an act of delinquency before turning 17, and has been placed under the juvenile court's supervision or on probation. D. L. correctly argues that he did not qualify as a child under either of these definitions at the time of the transfer hearing.[2]

However, it is not, as D. L. alleges, the age of the child at the time of the transfer hearing which is determinative of the juvenile court's jurisdiction, but the age of the child at the time the offense was committed which determines whether or not the juvenile court has jurisdiction. "Under [OCGA §§ 15-11-5 and 15-11-2], the juvenile

---

[1] After receiving one extension of time in which to file its brief, this Court twice ordered the State to file such brief by May 19, 1997, which deadline the State failed to meet.

[2] OCGA § 15-11-2 (2) (B) is inapplicable because, at the time of the transfer hearing, although D. L. was under 21 and had allegedly committed an act of delinquency before turning 17, he was not otherwise under the juvenile court's supervision or on probation at the time.

court has jurisdiction if the accused is under the age of seventeen at the time the offense is committed." *Edmonds v. State*, 154 Ga. App. 650 (269 SE2d 512) (1980). Because he was 16 when he allegedly committed what would have been aggravated assault had he been an adult, the juvenile court had exclusive original jurisdiction over D. L.'s case. See OCGA § 15-11-5. The juvenile court exercised this jurisdiction when it initiated proceedings against D. L. by filing a petition alleging delinquency, see OCGA § 15-11-11 (4), and once exercised, the only means by which the juvenile court could have divested itself of jurisdiction on these facts was by virtue of a transfer hearing held pursuant to OCGA § 15-11-39. That Code section constitutes "the *only* means by which the juvenile court can divest itself of jurisdiction under the Juvenile Code." (Punctuation omitted.) *In the Interest of D. B.*, 187 Ga. App. 3, 4 (369 SE2d 498) (1988).

These principles are illustrated in *In the Interest of K. L. L.*, 204 Ga. App. 320 (419 SE2d 312) (1992), a case procedurally similar to D. L.'s. In *K. L. L.*, the juvenile allegedly committed acts when he was 15 which, if he had been an adult, would have constituted the crimes of child molestation and aggravated child molestation. Id. at 320-321. Petitions alleging delinquency were filed in the juvenile court, and that court held a transfer hearing. Although at the time of such hearing K. L. L. was over the age of 17, the juvenile court retained jurisdiction over him for the offenses he allegedly committed prior to turning 17. The juvenile court transferred several of the petitions to superior court, and this Court affirmed. Id. at 321-322 (2).

Just as in *K. L. L.*, the juvenile court in this case retained jurisdiction over D. L. past his seventeenth birthday for the offense he allegedly committed as a juvenile. Cf. *W. F. v. State of Ga.*, 144 Ga. App. 523 (241 SE2d 631) (1978) (juvenile court held transfer hearing for 19-year-old who had allegedly committed offenses at the age of 16). An examination of OCGA § 15-11-39, the transfer statute, illustrates that this result is the only one contemplated by the Code. Subsection (d) of that statute provides that "[n]o child, either before or after reaching 17 years of age, shall be prosecuted for an offense previously committed unless the case has been transferred as provided in this Code section." If, as D. L. argues, the juvenile court automatically lost jurisdiction upon a child's turning 17, then by virtue of OCGA § 15-11-39 (d), a gap would exist in the law whereby a juvenile whose case had not been adjudicated or transferred before he or she reached 17 would be immune from prosecution. Such is neither the intent nor the meaning of the law. Therefore, despite his having turned 18 before the transfer hearing was held, it is clear that the juvenile court retained its jurisdiction over D. L. until the entry of its order transferring the case to superior court.

(b) D. L. also argues that the juvenile court had no jurisdiction

over him because at the time of the transfer hearing, he was no longer a resident of the county in which the juvenile court sat. However, the venue provision of the juvenile code provides that proceedings may be commenced either in the child's county of residence or, in delinquency actions, in the county in which the alleged offenses occurred. See OCGA § 15-11-15 (a). D. L. concedes that he was a resident of Fulton County, Georgia, when the Fulton County Juvenile Court commenced proceedings against him by filing a petition. It is also undisputed that the acts alleged to be delinquent behavior occurred in Fulton County. Accordingly, D. L.'s argument is without merit, and the change in his county of residence did not bar the juvenile court's exercise of its jurisdiction over him.

2. D. L. argues that the transfer hearing violated his right to due process. Specifically, he claims that his right to a fair hearing was violated when the State and the juvenile court waited two years to hold his transfer hearing. According to D. L., because the State and the juvenile court waited until he was an adult incarcerated in the state prison system on an unrelated matter before holding the hearing, a finding that he was not amenable to treatment as a juvenile became inevitable, making the transfer of his case to superior court virtually automatic. D. L. seems to contend that the delay caused by the State and the juvenile court resulted in his being denied the opportunity to proceed through the juvenile system.

"At the outset, we acknowledge that there must be scrupulous adherence to due process requirements in juvenile court proceedings." (Punctuation omitted.) *In the Interest of B. A. H.*, 198 Ga. App. 713, 714 (1) (402 SE2d 791) (1991). Although it cannot be said as a matter of law that due process may never be violated in a situation such as this one, where nearly two years elapse between the filing of the petition and the transfer hearing, it is clear that no due process violation warranting reversal occurred in this case.

Central to D. L.'s due process argument is the presupposition that had the State and the juvenile court dealt with his case when he was 16, the court would have found that he was amenable to treatment in the juvenile system, precluding a transfer. However, the transcript of the transfer hearing clearly indicates that no such decision would have been forthcoming. In reaching the determination that D. L. was not amenable to rehabilitation in the juvenile system, the juvenile court relied heavily upon D. L.'s lengthy juvenile history and the escalating violence of his offenses. Evidence was presented that beginning at approximately age 12, D. L. was adjudicated delinquent numerous times for offenses including theft by taking a motor vehicle, driving without a license, theft by taking, simple battery, entering an auto, theft by receiving stolen property, and obstruction of a police officer. The juvenile court noted that in light of these ear-

lier offenses, the juvenile system had nothing to offer D. L. with respect to rehabilitation for the alleged aggravated assault, as the system had unsuccessfully attempted to rehabilitate him from as early as ten or eleven years old. Finally, and most importantly, the juvenile court specifically found that "even at 16, when this offense was [allegedly] committed, disregarding anything about where he is right now, about his present record, even at that time . . . he would not [have been] amenable to any kind of treatment we offered here."

Therefore, assuming arguendo that some due process violation occurred by delaying D. L.'s transfer hearing, any such violation was rendered harmless by the court's finding that even had the hearing been held when D. L. was 16, shortly after the petition was filed, the result would have been the same. Accordingly, on the facts of this case, D. L.'s argument is without merit, and reversal is not warranted on due process grounds.

3. D. L. argues that the juvenile court erred by holding a transfer hearing and entering a transfer order after it had closed his case. He contends that after the juvenile court entered an order closing his case, such order was never reversed or modified, and therefore constituted an end to the litigation. Inasmuch as the record indicates that following a hearing on the closure issue, the juvenile court reopened the case, D. L.'s arguments in this regard are without merit.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 12, 1997.

*J. Robert Joiner*, for appellant.
*Paul L. Howard, Jr., District Attorney, Juliette O. W. Scales, Bettieanne C. Hart, Assistant District Attorneys*, for appellee.